| | |
|---|---|
| 1 | Richard L. Charnley (SBN: 70430) |
| 2 | **CHARNLEY RIAN LLP**<br>475 Washington Blvd. |
| 3 | Marina Del Rey, CA 90292<br>Telephone:   310.893,0294 |
| 4 | Email:       rlc@charnleyrian.com |
| 5 | *Attorneys for Plaintiff The Queens Jewels* |
| 6 | *LLC aka TQJ LLC* |

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TQJ LLC, a Florida Limited Liability Company,<br><br>                              Plaintiff,<br>    vs.<br><br>JENNIFER ESQUIVEL, an individual, and DOES 1 through 10, inclusive,<br><br>                              Defendants. | Case No.   2:25-cv-09673-BFM<br><br>**TQJ LLC'S REPLY TO JENNIFER ESQUIVEL'S OPPOSITION [DKT NO. 25]/REPLY IN SUPPORT OF MOTION TO DISMISS [DKT NO. 24]**<br><br>*HON. BRIANNA FULLER MIRCHEFF, MAGISTRATE JUDGE*<br><br>Action Filed: October 9, 2025 |
| JENNIFER ESQUIVEL, an individual,<br>                              Counterclaimant,<br>    v.<br>TQJ LLC, a Florida Limited Liability Company,<br>                              Counterdefendant. | Hearing Date        February 10, 2026<br>Hearing Time       10:00 AM<br>Courtroom            780<br>                              7th Floor<br>                              225 East Temple St.<br>                              Los Angeles<br>                              CA  90012 |

1

**REPLY TO OPPOSITION/REPLY ISO MOTION TO DISMISS**

# TQJ'S LLC'S REPLY TO OPPOSITION/REPLY IN SUPPORT OF MOTION TO DISMISS

**I.   INTRODUCTION AND SUMMARY OF REPLY**

The Copyright Act does not protect ideas, story concepts, character traits, suggestions, plot direction, thematic input, and continuity fixes, even when they influence a later work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 344–45 (1991). *See*, *e.g.*, *Winstead v. Jackson*, 509 F. App'x 139, 142 (3d Cir. 2013).

In her Opposition (the "Opposition") to TQJ's motion to dismiss (the "MTD") Jennifer Esquivel ("Esquivel") displays a lack of understanding of these fundamentals. As such, the Opposition relies on a series of flawed arguments: dismissal is far too early because discovery has not begun; the works constitute a "derivative dramatic work;" and the FACC properly alleges claims for Copyright Infringement and Copyright Ownership.

In this Reply, TQJ addresses each flawed argument and demonstrates why the Court should reject them and should order dismissal of Esquivel's copyright claims ***without leave to amend.***

**II.   DISCUSSION**

  **A.   The MTD Is Not Premature -- There Is No Need for Discovery.**

Esquivel argues for denial of TQJ's MTD because there is "reason to believe that more instances of TQJ's alleged copying will surface during discovery" along with more factual information regarding intent of the parties and the involvement of others (Doc 25, pg 6).   All of this has nothing to do with granting or denying the MTD.

The MTD properly requests review of six sets of notes submitted to the USCO (the "Six Notes" and, individually, by date, i.e., the "February 4 Note").[1]   Judicial

---

[1] For convenience of the Court, TQJ has submitted herewith Esquivel's Script Notes as a set of Exhibits numbered 10 through 15.  These Exhibits have been provided

review is not complicated. Whether elements in the Six Notes are "protected" is a question of law. Thus, the Court must first review the language of each of the Six Notes standing on their own to eliminate unprotectable ideas. *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1056 (9th Cir. 2020) If nothing remains after filtration, the Copyright Claim must be dismissed. *See Shame on You Prods., Inc. v. Banks*, 120 F. Supp. 3d 1123, 1150 (C.D. Cal. 2015), aff'd, 690 F. App'x 519 (9th Cir. 2017) *Peter F. Gaito Arch. v. Simone Dev. Corp.,* 602 F.3d 57, 63 (2nd Cir. 2010). The process prevents the result Esquivel seeks, namely, extorting TQJ by continuing to cloud TQJ's title during discovery proceedings that go nowhere.

### B. Esquivel Did Not Create a Derivative Work of TQJ's Screenplay

Typically a derivative is an extension of a preexisting work, such as a sequel, a remake, novelization, condensation, or other form in which a work may be recast, transformed, or adapted. 17 USC 101. The copyright owner has the exclusive right to either prohibit or authorize preparation of derivative works. 17 USC 106(2).

Esquivel did not create a derivative work. First, in the FACC Esquivel does not allege a "re-writing" of TQJ's screenplay(s). Her copyright claim is confined to the works she deposited with the USCO, which are described as "text and editorial revisions" ***expressly excluding any screenplays.*** Hence, none of the Six Notes contains a separate concrete expression inserted into any of the screenplay versions. Esquivel misplaces reliance *Aalmuhammed v. Lee,* 202 F.3d 1227 (9th Cir. 2000) as controlling authority. Unlike Esquivel, in *Aalmuhammed*, the plaintiff *actually rewrote specific passages of dialogue and scenes*. *Id* at 1231. Esquivel's USCO deposits contain no demonstration where she actually "wrote scenes," etc. (Exhibits

---

consecutive page numbers (i.e., TQJ Reply to Opp. 00001) so cited pages can be accessed easily. Esquivel's bullet points in each set of Notes are numbered for ease of reference. Relevant portions of the bullet points showing unprotected elements are highlighted. These Exhibits are the same Exhibits with same Exhibit numbers TQJ filed in support of the Motion to Dismiss. Exhibit 13 has been expanded to include pages that were inadvertently left off the previous filing.

10-15, pgs 1–28).

Second, any derivative work requires *copyrightable expression independent of the underlying work*. This does not include ideas, concepts, or matters excluded from copyright protection. 17 U.S.C. 102(b). Esquivel's "contributions," even if included in a screenplay fall within such exclusion. *Williams v. Crichton*, 84 F.3d 581, 587–88 (2d Cir. 1996) (plot ideas and concepts are not copyrightable). (See "Highlights" Exhibits 10-15, pgs 1–28).

Third, to qualify as a derivative, Esquival's work must be a fixed "work" embodying original expression, not commentary or instructions on how another should revise a work. 17 U.S.C. §§ 101, 102(a). Courts consistently reject claimants who seek to treat notes, feedback, or suggestions as derivative works because they do not recast or transform protected expression. *See Lewis v. Activision Blizzard, Inc.*, 2011 WL 2680778, at *5 (C.D. Cal. July 8, 2011) (editorial suggestions/feedback not protectable); *S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir. 1989) (derivative must incorporate protected expression from original work). At best, the Six Notes are meta-commentary and not a transformation of TQJ's Screenplay. (See "Highlights" Exhibits 10-15, pgs 1–28).

Fourth, suggestions such as illustrative language or examples, editorial, and functional contributions are viewed as editing and refinement, not a derivative work. *See Childress v. Taylor*, 945 F.2d 500, 507 (2d Cir. 1991) (editing and suggestions do not create authorship); *Kogan v. Martin*, 2019 WL 4750414, at *6 (S.D.N.Y. Sept. 30, 2019) (suggestions and critiques are insufficient). Hypothetical language offered to guide another author is not protectable unless adopted verbatim and as final authored content. *See Muller v. Triborough Bridge*, 43 F. Supp. 2d 372, 379 (S.D.N.Y. 1999) (ideas and recommendations, even if helpful, are not copyrightable).

Fifth, a derivative work must be "based upon" a preexisting work in a way that results in a new, independently exploitable expressive work. 17 U.S.C. § 101. Courts analyze whether the alleged derivative work could stand alone or substitute for the

original. *See Litchfield v. Spielberg*, 736 F.2d 1352, 1357 (9th Cir. 1984) (derivative requires substantial incorporation of protected expression); *Schrock v. Learning Curve Int'l, Inc.*, 586 F.3d 513, 520–21 (7th Cir. 2009) (derivative must recast or adapt original expression). *The content of Six Notes cannot be performed, filmed, distributed, or independently exploited and cannot qualify as derivative works.* (See "Highlights" Exhibits 10-15, pgs 1–28).

Sixth, authorship lies with the individual who exercises independent creative judgment and fixes the final expression. Even if ideas originate elsewhere, the author is the person who selects, arranges, and expresses them. *See Feist*, 499 U.S. at 358 (copyright protects selection and arrangement); *Satava v. Lowry*, 323 F.3d 805, 812 (9th Cir. 2003) (originality lies in the author's expressive choices). *See Gaiman v. McFarlane*, 360 F.3d 644, 661 (7th Cir. 2004) (authorship depends on control over expressive elements). The FACC does allege independent control. Esquivel's judicial admissions in the exhibits to the FACC, show this: **"*I guess nobody looked at my notes last time. Here is a repeat: remove CONT'D in the middle of Dan's dialogue*"** (Exhibit 13, point 4.10, pg 13, highlighted); and **"*Fantastic job! This is remarkably better than all the previous drafts*** (Exhibit 14, introductory paragraph, pg. 23, highlighted).

Finally, courts reject interpretations of the Copyright Act that would destabilize settled industry practice. Accepting the theory that routine producer notes create derivative works would confer copyright ownership to non-writers, an outcome courts have repeatedly declined to endorse. *See Aalmuhammed*, 202 F.3d at 1235 (expanding authorship theories would create chaos in collaborative industries); *Childress*, 945 F.2d at 508 (warning against transforming ordinary collaboration into copyright ownership). The law draws a firm line between feedback and authorship, and Esquivel's derivative theory impermissibly erases that boundary.

**C.    The FACC Fails to State a Plausible Copyright Claim Because No Protectable Expression Is Identified**

When a considering a motion under Rule12(b)(6), the legal effect of the works [is] determined by the works themselves rather than by allegations in the complaint." *Jacobsen v. Deseret Book*, 287 F.3d 936, 941–42 (10th Cir. 2002). In its pleading a party claiming an infringement must identify portions of the party's work that have been infringed and identify where such copying appears in the infringer's work. Failure here results in dismissal for failure to state a claim. *Plakhova v. Hood,* CVTJHFFMX, 2017 WL 10592315 (C.D. Cal. June 20, 2017 --- Hatter).

### D. Esquivel Cannot Cure Her Defective Pleading By Adding New "Claims" of Copying In the Opposition

In her Counterclaim, Esquivel failed to designate protected elements and to allege where they were allegedly "copied" by TQJ. Then, after Esquivel reviewed TQJ's Answer (Doc. 18), she filed the FACC, attaching over 700 pages of exhibits, incorporating them by reference. But she identified only four instances where an alleged "protected element" was allegedly copied by TQJ. The MTD addressed each and established that none was entitled to protection of the Copyright Act.

Now, in the Opposition, Esquivel inappropriately submits additional claims of "protected elements" and instances of "copying." But, "Facts raised for the first time in plaintiff's opposition papers should not be considered in ruling on a 12(b)(6) motion." *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003). "Plaintiff cannot amend the complaint through arguments in an opposition brief." *Steele v. County of San Mateo*, 2021 WL 917867 (N.D. Cal. Mar. 10, 2021). A court may not look beyond the complaint to opposing papers. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).

### E. Esquivel's New Additions to Her Allegations Do Not Save the Copyright Claim From Dismissal

Even "if" the Court overlooks Esquivel's abuse of procedure and considers Esquivel's "additional instances of infringement", there is still no identification of "protected elements" that were allegedly copied by TQJ.

In the Opposition, Esquivel presents "cut and paste" samples from each of her Six Notes (February 4, 11, 17, 25, March 3 and March 17 (Doc. 25, pg 10-14, and 18 – 27). She claims that each of the samples provides "protected elements" and provides pages from TQJ's screenplays where elements were allegedly "copied."

Yet, Esquivel *never claims to have actually written anything that appears in any of TQJ's screenplays, nor does she claim any verbatim copying*. In fact, she admits the opposite by claiming there is a "substantial similarity" between her work(s) and TQJ's allegedly infringing work (Doc 25, pg 16, 19-26). Substantial similarity applies only when the claimant concedes (as does Esquivel in the Opposition) that "the defendant has *not* engaged in literal copying." *Nimmer on Copyright* § 13.03.

Hence, any "modification" of TQJ's screenplays, could only be the result of the actual writer's (i.e., Joshua, not Esquivel) adoption and rejection of some of Esquivel's ideas and expressing them as such in concrete fashion in the screenplays themselves. Making things worse, Esquivel cherry-picked her claims while deliberately obscuring the truth. For example, with respect to the Esquivel's reliance on a redline change "My mom died during childbirth" (at Doc. 15, pg 18), Esquivel deceptively fails to inform the Court that there is *no mention whatsoever of Beau's mother in the Shooting Script* (Exhibit 10 to FACC, Doc. 22.10, pg 1 – 107).

**<u>No Protectable Elements in the February 4 Note.</u>**  Esquivel argues that 6 of 13 bullet points in the February 4 Note contain protectable expression (Doc. 25, pg 10) (See Exhibit 10 hereto, pg. 2, highlights). TQJ addresses these by the numbers given them in Exhibit 11: Point 1.3 - "Maybe that's how they met;" Point 1.4 – "As we discussed, have Skippy be more reluctant;" Point 1.5 – "feels too casual …there should be some more urgency;" Point 1.7 – "Rocky should see them in the restaurant;" Point 1.9 – "Can he mention his mom died instead of bailing … (concern of having negative slant on his mom);" Point 1.10 – "does Federico leave them to die? Maybe he grabbed all the gold … They have to figure out how to get out?" Clearly, these "notes" are exactly the type entries that courts consistently deem "unprotectable" and

filter "out."

***No Protectable Elements in the February 11 Note.*** Esquivel argues that two of the bullet points in the February 11 Note contain protectable expression ( Doc. 25, pg 11). (See Exhibit 11 hereto, pg 4-6, highlights). TQJ addresses these by the numbers given them in Exhibit 11: Point 2.26 "It's still not urgent enough;" Point 2.18 "I could eat now." Again, these elements are comments and proposals, not "protected" by the Copyright Act that should be filtered out.

***No Protectable Elements in the February 17 Note.*** Esquivel argues that 4 of the bullet points in the February 17 Note contain "protectable expression" (Doc 25, pg 11- 12) (See Exhibit 12 hereto, pg.8-10, highlights). Addressed by numbers in Exhibit 10: Point 3.6 "It is still not urgent enough, they need to get to the island and start searching, no time to meander;" Point 3.7, "I wouldn't go into John Merrick … maybe a display … ?;" Point 3.16 "I would have Rocky go into the museum at night;" Point 3.29 "I don't like the set up of Dan being killed overtly." There is nothing here that is "protected" by the Copyright Act. Esquivel's notes are clearly just suggestions or "ideas" that are filtered "out."

***No Protectable Elements in the February 25 Note.*** Esquivel argues that 9 of the bullet points in the February 25 Note contain "protectable expression" (Doc 25, pg 12 – 13) (See (See Exhibit 13 hereto, pg. 12-20, highlights). They are set forth by point number in Exhibit 13: Point 4.85 "How is the gunpowder displayed?;" Point 4.86 "Victoria didn't buy the journal. also this dialogue needs to be cleaned up … .;" Point 4.87 "Rocky and shrug at Victoria --- they should be scared of her. they just seem like idiots." Point 4.88 "Also – ramp up the intensity in this scene;" Point 4.90 "Alonzo or Rocky should come back;" Point 4.91 "They should show signs of being impacted by the gunpowder;" Point 4.92 "Lose line "we are dead?" Point 4.93 "When did they bury the telescope … not believable;" Point 4.94 "Beau should have some signs of head injury;" 4.100 "Victoria should not be such a pushover;" Point 4.115 "Orion should holler …." The modal or auxiliary verb "should" used in 6 of the nine

8

**REPLY TO OPPOSITION/REPLY ISO MOTION TO DISMISS**

bullet points. The remaining bullet points are instruction and comments. There are no protectable elements cited by Esquivel in the February 25 Note.

**<u>*No Protectable Elements in the March 3 Note.*</u>** Esquivel argues that 3 of the bullet points in the March 3 Note contain "protectable expression" (Doc 25, pg 13) (See Exhibit 14 hereto, pg. 23-24, highlights) Addressed by numbers in Exhibit 14: Point 5.16 "she should kick him in the gut … also still wondering how they maneuver a machete …. I think for some of the scenes .. a smaller blade would work better;" Point 5.19 "should establish that Beau knows Spanish… I would have Lala punch her in the face;" Point 5.24 "they should kiss." The axillary verb "should," is in each bullet point. The suggestion "should" does not support a protectable element in any of the points addressed by Esquivel.

**<u>*No Protectable Elements in the March 17 Note.*</u>** Esquivel argues that 6 of the bullet points in the March 17 Note contain "protectable expression" (Doc 25, pg 14) (See Exhibit 15 hereto, pg. 26-18, highlights). Addressed by numbers in Exhibit 15: Point 6.19 "Lose Lala line … I feel like he's explained this to death already. Maybe just choose one spot… I think it would help this scene;" Point 6.22 "fix stunts … you could lose that. have Lala knee him … also, now the machete comes from nowhere;" Point 6.24 "if we see Lala … would he also see her. Also-this makes more sense with a smaller blade;" 6.25 "if there is a centurion here, wouldn't he go after Lala? And wouldn't Victoria step back … ;" Point 6.26 "Same machete note .. should be something shorter … I still want a line from someone;" Point 6.36 "skip is standing right by Victoria. Why wouldn't he be the one to taker her out instead of Lala?" Esquivel's selections all use "would" as a suggestive modal auxiliary verb, making them only ideas, clarifications, preferences, and suggestions, none of which is a protected element.

### F. Esquivel's "Substantial Similarity" Argument is Irrelevant

Esquivel seeks denial of the MTD based on the "substantial similarities" between her USCO deposits and TQJ's screenplays. Yet because Esquivel never

9

**REPLY TO OPPOSITION/REPLY ISO MOTION TO DISMISS**

identifies specific protected elements in the Six Notes, her argument falls to the rule that substantial similarity proceeds ONLY with respect "protectable elements" remaining after filtration. To ensure its position, TQJ addresses each of Esquivel's "examples" and establishes lack of substantial similarity of protectable elements:

**Esquivel Example 1 --- Death of Beau's Mom --- (Doc, 25 pg 18)** comes from an unprotectable suggestion in the February 4 Note changing Mom's backstory ("can he mention his mom died instead of bailing"). Even if used, changing the reason in a stock backstory not protected by the Copyright Act. Also, although conveniently overlooked by Esquivel, the actual writer changed things in subsequent screenplays, and in the Shooting Script there is no mention of Mom at all. (Exhibit 10, Doc. 22.10).

**Esquivel Example 2 -- Does Federico leave them to die? (Doc. 25, pg 19-20)** --- an unprotectable suggestion. Even if used, the general "idea" that a villain leaves protagonists for dead followed by an escape is a genre-common trope. It is a "plot idea" which the writer was free to accept or reject in whole or in part.

**Esquivel Example 3 -- on Skippy's boat –** *As discussed, have Skippy be a little more reluctant* **(Doc. 25, pg 20-21)** --- an unprotectable suggestion of character tome and traits based on a "discussion" with an unidentified party. Even if used, there is no "instruction" on how to show more "reluctance," which is the writer's choice.

**Esquivel Example 4 – "How is the gunpowder displayed? a big pile? it has to make sense" (Doc 25, pg 21-22) –** unprotectable suggestions without specifics. As Esquivel's excerpt establishes, the writer made the choice to place the gunpowder beneath a treasure chest overflowing with golden coins and trinkets." Negative suggestions, such as removal of dialogue, are not protected by the Copyright Act. Questions such as "how is the gunpowder displayed" address continuity and are editorial feedback. Use of a device to trap protagonists in a cave is also a genre common trope.

**Esquivel Example 5 – Lengthy Note with suggestions "dialogue needs to be cleaned; she should seem; they should be scared;" they just seem like idiots;

**Victoria should snap; lose all of her dialogue; ramp up intensity; they should be terrified; someone needs to keep Orion in surrender; lose the "smorgasbord" line; henchmen should light something" (Doc. 25, pg 22 – 31) ---** unprotectable suggestions and stage direction, with choice actual concrete expression left to the writer. Esquivel's alleged modifications (even assuming they were "protectable") do not link up with Scene 96 of the March 3 Screenplay provided by Esquivel (Doc 25, pg 24). For example: Esquivel suggests deletion of Victoria's dialogue to read only "really I'm not" (Doc 25, pg 23), but Victoria's actual dialogue reads, "It seems as if we have come to an impasse. I'm not a violent person by nature. Really I'm not;" Esquivel suggests that Alonzo or Rocky should ignite the gunpowder (Doc. 25, pg 24), but in Scene 96, Alonzo and Rocky actually appear to leave the room, while Victoria, not Alonzo or Rocky removes a torch from the wall (not a lighter) and tosses into a pile of gunpowder" (Doc. 25, pg 24-25). Hence, the "modified scene" bears little, if any (certainly not substantial), similarity to Esquivel's suggestions.

**Esquivel Example 6 – Victoria should not be a pushover (Doc 25, pg 25-26) ---** unprotectable suggestions of character tone and trait and what the writer *should* consider when engaged in concrete expression. Esquivel provides no thoughts on how to make Victoria "tougher," leaving expression of this suggestion to the writer.

**Esquivel Example 7 – they should kiss (Doc 25, pg 27) ---** unprotectable suggestion about what characters "should do." Also, a kiss between Beau and Lala is not even an original thought, to wit, *Beau and Lala's kiss was already written into the February 4 Screenplay* (Exhibit 5, Feb.4 Screenplay pg 100). This is not an element protected by the Copyright Act (see MTD, Doc 24, pg 18).

III. <u>CONCLUSION</u>

As established herein, Esquivel has failed to identify any "protected expression" that has been copied (allegedly) by TQJ. Hence the Copyright Claim should be dismissed without leave to amend so TQJ can have clear and unfettered title to its intellectual property.

1
2       January 27, 2026
3
4
5
6
7

Respectfully submitted,

*Richard L. Charnley*
_____
RICHARD L. CHARNLEY, ESQ.
*Attorney for TQJ LLC*

12
**REPLY TO OPPOSITION/REPLY ISO MOTION TO DISMISS**